UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:

KEITH O. MOSES, *aka* KEITH O.D. MOSES,       Chapter 7
*aka* KEITH MOSES, *aka* DOUGY MO,        Case No. 10-51769-ess

                      Debtor.
----------------------------------------------------------------x

FIRST AMERICAN TITLE INSURANCE
COMPANY,

                      Plaintiff,

                                  Adv. Pro. No. 11-01286-ess

     *-against-*

KEITH O. MOSES, *aka* KEITH O.D. MOSES,
*aka* KEITH MOSES, *aka* DOUGY MO,

                      Defendant.

----------------------------------------------------------------x

## MEMORANDUM DECISION ON
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Appearances:

   Raymond R. Siberine, Esq.           Keith O. Moses, Esq.
   Stein McGuire Pantages Gigl, LLP     P.O. Box 8264
   354 Eisenhower Parkway         Jersey City, NJ 07308
   P.O. Box 460                    *Pro Se*
   Livingston, NJ 07039-0460
     *Attorneys for First American Title*
     *Insurance Company*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion (the "Motion") of First American Title Insurance Company ("First American"), the Plaintiff in this adversary proceeding, for summary judgment against the Defendant, Debtor Keith Moses.  First American brings this adversary proceeding under Bankruptcy Code Section 523(a) to challenge the dischargeability of a judgment debt that it obtained on default against Mr. Moses in New Jersey state court (the "Judgment Debt").

The Motion calls for the Court to consider whether First American has established, as a matter of law, that there is no genuine dispute as to a material fact with respect to each of the elements of its claims that the Judgment Debt should not be discharged in Mr. Moses's bankruptcy case.  That inquiry, in turn, requires the Court to consider as a threshold matter whether the default judgment entered by the New Jersey state court and the doctrine of collateral estoppel act as a bar to prevent Mr. Moses from litigating certain issues in this Court.

First American relies on three provisions of Section 523(a) to argue that the Judgment Debt should lie outside the scope of those obligations that may be discharged in Mr. Moses's bankruptcy case.  It argues first that under Section 523(a)(2)(A), the Judgment Debt arises from Mr. Moses's use of "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  Next, it argues that under Section 523(a)(4), the Judgment Debt arises from Mr. Moses's "fraud or defalcation while acting in a fiduciary capacity."  11 U.S.C. § 523(a)(4).  And finally, First American argues that under Section 523(a)(6), the Judgment Debt arises from "willful and malicious injury" by Mr. Moses to another entity or its property.  11 U.S.C. § 523(a)(6).

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference in effect in the Eastern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## Procedural History

First American and Mr. Moses have been engaged in litigation in this Court and in the New Jersey state courts for several years. The procedural history of these actions has some bearing on this motion, and is described below.

### *The New Jersey State Court Action*

As set forth in First American's submissions, and as Mr. Moses does not contest, First American brought an action in the Superior Court of New Jersey, Chancery Division, in order to quiet title and/or partition real property located at 12 Ivy Place in Jersey City, New Jersey (the "Property"). In that action, First American sought determinations with respect to the nature of the interests in the Property held by three individuals who are now deceased, Lucius Turner, Rose Turner, and Ella Turner, to whom interests were conveyed by deed more than fifty years ago, in 1958. In substance, the question to be determined was whether those individuals held title to the Property as joint tenants or tenants in common. The answer to that question was necessary to resolve a discrepancy between a 2001 deed to the Property prepared by Mr. Moses and certain claims to the Property asserted by heirs of Ella Turner.

### *This Bankruptcy Case and Adversary Proceeding*

Mr. Moses filed a Chapter 7 bankruptcy petition on December 17, 2010. Two months later, on February 18, 2011, the Court granted First American's motion for relief from the

automatic stay to allow it to proceed with claims against Mr. Moses in the New Jersey state court action up to the entry of judgment, with enforcement to be subject to further order of this Court. And one month after that, on March 25, 2011, First American commenced this adversary proceeding against Mr. Moses by filing a complaint asserting nondischargeability claims under Bankruptcy Code Sections 523(a)(2), 523(a)(4), and 523(a)(6).

Mr. Moses answered the complaint and counterclaimed against First American on May 20, 2011. On that same day, the Court held a pretrial conference at which First American and Mr. Moses appeared. On consent, the Court directed First American to file an amended complaint by June 17, 2011, and Mr. Moses to respond by July 15, 2011. First American answered the counterclaims on May 24, 2011.

First American filed an amended complaint that asserts an additional nondischargeability claim against Mr. Moses on June 17, 2011. It also requested a premotion conference. Two months later, on August 16, 2011, Mr. Moses answered the amended complaint, and the Court held pretrial and premotion conferences at which American and Mr. Moses appeared, and set a discovery deadline of October 17, 2011.

Later that month, First American made its initial Rule 26 disclosures, and on September 13, September 22, and October 3, 2011, First American advised the Court that Mr. Moses was in default of his Rule 26 disclosure and other discovery obligations.

The Court held additional pretrial conferences on October 11, 2011, and January 3, 2012, at which First American appeared and Mr. Moses did not appear or explain his absence. At the request of First American, the Court extended the discovery period to November 29, 2011, and then to January 17, 2012, and set a deadline for dispositive motions of March 2, 2012 and then

3

April 2, 2012.

On March 15, 2012, the Court held a pretrial conference at which both First American and Mr. Moses appeared.  But at the following pretrial conference, on May 17, 2012, First American appeared but Mr. Moses did not, and the Court again extended the deadline for submissions of dispositive motions, to July 16, 2012.

The Court held another pretrial conference on July 19, 2012, at which First American and Mr. Moses appeared.  They confirmed on the record that discovery was complete.  At the request of the parties, the Court again extended the deadline for dispositive motions, to September 28, 2012, and then to October 22, 2012.  On October 18, 2012, First American filed this motion for summary judgment together with a memorandum of law and several exhibits, including the declaration and certification of Raymond R. Siberine, First American's counsel.

On November 14, 2012, the Court held a pretrial conference at which First American and Mr. Moses appeared.  One month later, on December 12, 2012, Mr. Moses filed opposition to the Motion in the form of an "Answer."  That same day, the Court held a pretrial conference and hearing on the Motion, at which First American appeared and Mr. Moses did not appear.  About a week later, on December 20, 2012, the Court held another pretrial conference and hearing on the Motion, at which First American and Mr. Moses appeared.  Briefing on this Motion was completed on January 17, 2013, when First American filed a reply brief.

On January 24, 2013, the Court heard argument on the Motion from First American and Mr. Moses.  On April 25, 2013, the Court held a pretrial conference and further hearing on the Motion, and reserved decision.

## **Background**

The parties' journey to this forum spans a period of many years and involves multiple wills, deeds, and transfers of title. It also encompasses proceedings in this Court as well as the surrogate and chancery courts of New Jersey. The record shows that certain facts are undisputed, and other facts may be determined as a matter of law.

First American is a title insurance company organized and existing under the laws of the State of California, with a principal place of business in New Jersey where it is licensed to issue title insurance commitments and policies. In approximately June 2006, United General Title Insurance Company issued a commitment for owner and mortgage policies on the Property, the rights and obligations of which were subsequently transferred to First American. First American is also an unsecured creditor in Mr. Moses's bankruptcy case, and Mr. Moses lists First American as the holder of an unsecured, nonpriority claim in the amount of $5,000 on Schedule F of his bankruptcy petition.

Mr. Moses is an attorney licensed to practice in New Jersey. Mr. Moses provided various professional services in his capacity as an attorney that give rise to First American's claims in the New Jersey state court action and here.

Mr. Moses prepared a will, executed on April 9, 1998, for his client, Rose or Rosa Turner. In pertinent part, the will states:

> I give, devise and bequeath my real property known as 12 Ivy Place, Jersey City to my sister-in-law, Odessa Turner, should [s]he survive me by 30 days, and if [s]he shall not so survive me then I leave the property to Frances Turner and Mildred Turner or to the survivor of them should she survive me by thirty days.

Siberine Cert. June 28, 2011, Exh. P-31, ECF No. 52. The will does not disclose any other

interests in the Property.

Rose Turner passed away on June 3, 1998.  Mr. Moses prepared an application for probate of Rose Turner's will which does not disclose any other interests in the Property. Judgment for probate of Rose Turner's will was issued on June 16, 1998, and Mr. Moses prepared a deed in accordance with that will.

Odessa Turner passed away intestate on April 28, 1999.  Mr. Moses prepared an application for administration of the estate of Odessa Turner naming Louella McFadden as administratix, and judgment granting letters of administration upon the goods, chattels, and credits of Odessa Turner and a letter of administration appointing Ms. McFadden as administratix were issued on June 8, 2001.

Mr. Moses prepared two deeds to the Property, in July and September 2001.  Neither of these deeds discloses any other interests in the Property.  The July 11, 2001 deed states that Rose Turner is the "surviving joint tenant of the joint tenancy between Lucius Turner and Rose Turner, his wife and Ella Turner, his mother all deceased" and deeds the Property in its entirety to Odessa Turner "[s]ubject to such state of facts as an accurate survey may disclose" and "[s]ubject to existing tenancies."  Siberine Cert. June 28, 2011, Exh. P-43.  And the September 8, 2001 deed transfers the Property from Ms. McFadden to Wesley McFadden and Ed Turner, similarly "[s]ubject to such state of facts as an accurate survey may disclose" and "[s]ubject to existing tenancies."  Siberine Cert. June 28, 2011, Exh. P-44.

As a result of the undisclosed title interests in the Property, U.S. Bank filed a claim with its title insurer, First American, citing an impairment of its mortgage lien.

First American filed an action in New Jersey state court against Mr. Moses and several

6

other parties to quiet title and/or partition the property on March 4, 2010, and on September 15,

2011, First American obtained a default judgment against Mr. Moses in the amount of

$185,295.14.  In entering that judgment on default, the court stated that Mr. Moses committed a

fraud on the court and engaged in a fraudulent conveyance of the Property.  Specifically, the

court found that Mr. Moses had committed a fraud on the court by, among other things,

"[p]reparing and submitting to the Surrogate's Court, Hudson County, a defective application for

the administration of the Estate of Odessa Turner" and an affidavit in support of that application,

while "[f]ailing to disclose and creating the circumstances which allowed the affiant to fail to

disclose to the Surrogate's Court" the other interests held in the Property.  Siberine Cert. Nov.

30, 2010, Exhs. M and Q, ECF No. 51.

The New Jersey court also found that Mr. Moses had committed fraud on the court by

preparing a faulty deed, by which his client "purported to convey all of the Property" and

"fail[ed] to disclose therein any [other] interest[s] in the Property."  *Id.*  The court additionally

found that Mr. Moses had engaged in a fraudulent conveyance of real property by "[p]reparing

and causing submission to the Surrogate's Court, Hudson County, of an application for the

probate of the Will of Rose Turner knowing that [the will], which was prepared by Defendant

Moses, disposed of the Property as the textatrix's exclusively" and by "[f]ailing to disclose" to

that court any other interest in the property, and by preparing, executing, and recording a faulty

deed. *Id.*

Mr. Moses states that he intends to pursue an appeal of the default judgment that includes

the findings above, but the record is unclear as to the status of this effort.

In the midst of these proceedings, on December 17, 2010, Mr. Moses filed for relief under

Chapter 7 of the Bankruptcy Code with this Court and some two months later, on February 18, 2011, this Court ordered that the automatic stay be lifted to permit the New Jersey state court action to proceed up to the entry of judgment, with enforcement to be subject to further order of this Court.

## Discussion

The issues raised by this motion call for the Court to consider the summary judgment standard, the application of the doctrine of collateral estoppel in the context of a default judgment under New Jersey law, and the bankruptcy law governing the dischargeability of a debt. These matters are addressed below in turn.

### The Standard for Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In making these determinations, "'a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.'" *Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011) ("*UTA*") (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)). *See Mathirampuzha v. Potter*, 548 F.3d 70, 72-73 (2d Cir. 2008) (stating that in

8

reviewing a motion for summary judgment a court must "construe the evidence in the light most favorable to the [nonmoving party], drawing all reasonable inferences and resolving all ambiguities in [that party's] favor." (citation and internal quotation marks omitted)). Summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).

On summary judgment, the moving party bears the burden to show that it is entitled to relief. That is, the moving party must first demonstrate that there is no genuine dispute as to any material fact as to each essential element of its claim. If it does not, summary judgment will be denied. *See, e.g.*, *Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd*, 375 F. App'x 73 (2d Cir. 2010).

If the moving party meets this initial burden, "the burden [then] shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *UTA*, 446 B.R. at 49. "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *4 (S.D.N.Y. Aug. 16, 2002) (citing *Anderson*, 477 U.S. at 249), *aff'd*, 74 F. App'x 152 (2d Cir. 2003). To meet this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine dispute of fact exists. *Anderson*, 477 U.S. at 249 (citation and internal quotation marks omitted).

Notably, "[s]tatements in the pleadings alone are not sufficient to meet this burden." *UTA*, 446 B.R. at 49. Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived 'to put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003)), *aff'd*, 370 F. App'x 197 (2d Cir. 2010). "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *Eugenia*, 649 F. Supp. 2d at 117 (citing *Weinstock*, 224 F.3d at 41).

Claims that sound in fraud raise additional considerations. "While the issue of fraudulent intent ordinarily cannot be resolved on summary judgment, it is also well-recognized that the summary judgment rule would be rendered sterile if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion." *UTA*, 446 B.R. at 50 (citations and internal quotation marks omitted). *See Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (finding that when intent is at issue, "summary judgment should be used sparingly").

And finally, the denial of summary judgment in the face of a genuine dispute as to a material fact does not amount to the court's endorsement of the defendant's position. Rather, denial of summary judgment only means that the case should be heard by the trier of fact, and cannot be resolved as a matter of law. *See, e.g.*, *UTA*, 446 B.R. at 50 (citing *Huff v. UARCO, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997)).

## *The Application of the Doctrine of Collateral Estoppel to the New Jersey Default Judgment*

The starting point for consideration of whether the doctrine of collateral estoppel may be invoked by First American is the principle that federal courts must accord full faith and credit to the final judgments of state courts. This principle finds its roots in Article IV of the U.S.

Constitution and the Full Faith and Credit Act, which provides "that state judicial proceedings, 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State[] . . . from which they are taken.'"  *Nissan v. Weiss (In re Weiss)*, 235 B.R. 349, 354 (Bankr. S.D.N.Y. 1999) (citing 28 U.S.C. § 1738), *aff'd*, 255 B.R. 115 (S.D.N.Y. 2000).

The concept of full faith and credit applies in bankruptcy courts with the same force and effect as it does in any other court.  *In re Farrell*, 27 B.R. 241, 243 (Bankr. E.D.N.Y. 1982) (finding it to be "clear that the bankruptcy court by virtue of 28 U.S.C. Section 1738 is to give full faith and credit to a prior final state court judgment in the same manner as would the court in that state pursuant to the Full Faith and Credit Clause of the Constitution").

Collateral estoppel is the logical extension of this doctrine and "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  *Rahman v. Park (In re Park)*, 2011 Bankr. LEXIS 1339, at *12-13 (Bankr. E.D.N.Y. Apr. 8, 2011) (quoting *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999)).

When a nondischargeability action arises from a judgment entered by another court, collateral estoppel is often invoked.  Courts in this District and Circuit have noted that in such circumstances, collateral estoppel "must be applied with the utmost caution" to avoid inflicting upon a debtor the "severe" consequences of denying the discharge of debts where such denial may not be warranted.  *Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 2011 Bankr. LEXIS 3112, at *20 (Bankr. S.D.N.Y. Aug. 16, 2011).

As one court has observed, a plaintiff may find it difficult to establish each element of a

11

nondischargeability claim by relying upon a decision rendered by another court due to the requirement that the "issues necessarily decided in the State Court action [be] identical to those presented in the present [nondischargeabilty] action." *Wisell*, 2011 Bankr. LEXIS 3112, at *21.

And when the judgment was issued by a state court, the collateral estoppel doctrine also calls for the court to look to the context in which the judgment was entered. This implicates several considerations, including whether the judgment at issue would be given preclusive effect under the law of that state. Viewed another way, the collateral estoppel effect of a state court judgment in this Court should be the same as it would be in another court of that state. As one court noted, "[i]n giving preclusive effect to a decision or judgment, courts look to the law of the state in which the decision or judgment was rendered." *Adler v. Ng (In re Adler)*, 395 B.R. 827, 835 (E.D.N.Y. 2008). *See In re Farrell*, 27 B.R. at 243 (full faith and credit calls for the bankruptcy court to accord preclusive effect to a state court judgment "in the same manner as would the court in that state"). As a result, the doctrine of collateral estoppel means that this Court is bound to give effect to the New Jersey default judgment to the same extent as would a New Jersey state court.

New Jersey law provides that collateral estoppel applies where:

(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Grumbine v. Azeglio (In re Azeglio)*, 422 B.R. 490, 494 (Bankr. D.N.J. 2010) (citing *In re Estate of Dawson*, 136 N.J. 1, 20 (N.J. 1994)). New Jersey courts generally find that in the case of a

default judgment, this standard cannot be met, and collateral estoppel does not apply. *Azeglio*, 422 B.R. at 494 (finding that "[a]s their federal counterparts do, New Jersey courts also agree that collateral estoppel may not be applied in the case of a default judgment") (citing Restatement (Second) of Judgments § 27 cmt. e (1982)). *See Mattson v. Hawkins (In re Hawkins)*, 231 B.R. 222, 231 (D.N.J. 1999) (holding that "[p]ursuant to New Jersey law, collateral estoppel does not apply to default judgments because such judgments are not 'actually litigated'") (quotation omitted); *Slowinski v. Valley Nat'l Bank*, 264 N.J. Super. 172, 183 (N.J. Super. Ct. App. Div. 1993) (noting that "the factual issues directly involved must have been actually litigated and determined").

Equitable considerations also weigh in the determination of whether collateral estoppel effect should be accorded to a judgment of another court. As the New Jersey Supreme Court has observed, the doctrine "has its roots in equity" and "will not be applied when it is unfair to do so." *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521-22 (N.J. 2006) (citation and internal quotation marks omitted) (finding that collateral estoppel effect should be denied to certain administrative proceedings due to their procedural limitations, different purposes, and failure to afford litigants a full and fair opportunity to litigate factual issues). *See Pace v. Kuchinsky*, 347 N.J. Super. 202, 218 (N.J. Super. Ct. App. Div. 2002) (relying on equitable considerations to find that collateral estoppel did not apply where a party did not have his day in court, noting that the party had not had "an adequate opportunity to be heard nor an incentive to demand a full and fair adjudication . . . ."). Even where a default judgment issues as a result of a defendant's willful lack of participation in the proceedings, or where a defendant has participated to some extent, it is unlikely that the resulting default judgment would be accorded preclusive effect under New

13

Jersey law.

Bankruptcy courts addressing this issue have declined to give preclusive effect to default judgments rendered by a New Jersey state court where a defendant did not have a full and fair day in court on the issue at hand.  For example, in *Aglezio*, the New Jersey bankruptcy court surveyed New Jersey law on issue preclusion and concluded that "the New Jersey Supreme Court is unlikely to afford preclusive effect to a state court judgment where the defendant participated in pretrial proceedings but did not have notice of and did not appear for the trial."  *Azeglio*, 422 B.R. at 495.  The court noted:

> [T]he requirement that a matter be "actually litigated" means just that:  the party against whom the doctrine is sought to be applied must have had a full and fair opportunity to litigate the issue to be precluded, so that a judgment on the merits, reached after an adversarial hearing, is entered.

*Azeglio*, 422 B.R. at 497.

Similarly, in *Milenkovic v. Gonzalez*, the bankruptcy court declined to give preclusive effect to a default judgment under New Jersey law, and observed:

> [T]here is little doubt that [a default judgment] was not actually litigated nor determined on the merits.  The Defendants were not present at the original proof hearing and their lawyer did not even appear in court on the motion to vacate the default judgment when, according to the certifications filed, counsel's primary argument was that the Debtors should have their day in Court.

*Milenkovic v. Gonzalez*, 2012 Bankr. LEXIS 2604, at *9 (Bankr. D.N.J. June 7, 2012).

First American argues that under the doctrine of collateral estoppel, the factual findings set forth in the New Jersey default judgment are established for purposes of this Court's inquiry into the nondischargeability of Mr. Moses's debt, including with respect to the issues of Mr. Moses's knowledge and intent.  Mr. Moses responds that collateral estoppel and the Full Faith

and Credit Act do not apply to a default judgment.

As discussed above, this Court should give the same collateral estoppel effect to the New Jersey default judgment as would a New Jersey state court. First American has not demonstrated that the facts determined for purposes of the default judgment were "actually litigated" in that forum. Nor has First American shown that those matters were determined "on the merits." A review of New Jersey case law indicates that as a rule, New Jersey courts do not give preclusive effect to default judgments. It also suggests that New Jersey law would yield this result even if the defendant had notice and willfully declined to participate in the proceedings, or participated to some extent. Thus, it appears unlikely that a New Jersey court would give preclusive effect to the default judgment at issue here.

Based on the entire record, the Court declines to apply collateral estoppel effect to the New Jersey default judgment with respect to the issues of Mr. Moses's knowledge and intent.

### _Whether the Judgment Debt Is Nondischargeable Under Section 523(a)(2)(A)_

Exceptions to dischargeability are construed narrowly, in accordance with the bankruptcy purpose of providing debtors with a fresh start. As the Supreme Court recently observed, exceptions to discharge "should be confined to those plainly expressed." _Bullock v. BankChampaign, N.A._, 133 S. Ct. 1754, 1760 (2013). And as this Court has noted, "[t]his penalty is not lightly to be invoked, as it is widely recognized that exceptions to discharge are narrowly construed." _Chao v. Duncan (In re Duncan)_, 331 B.R. 70, 87 (Bankr. E.D.N.Y. 2005).

In Section 523, Congress has identified certain circumstances where considerations of public policy, fairness, and equity may lead to a denial of the dischargeability of a particular debt. These exceptions apply where the debts at issue implicate significant policy or fairness

15

considerations, such as fault (Sections 523(a)(2)(A), (a)(2)(B), (a)(6), and (a)(9)), and the failure

to pay certain special kinds of obligations, including taxes (Sections 523(a)(1), (a)(7), (a)(14),

and (a)(14A)), educational loans (Section 523(a)(8)), and spousal and child support (Section

523(a)(15)).  *Bullock*, 133 S. Ct. at 1756.  The party challenging the dischargeability of a debt

bears the burden of showing that it comes within one of Section 523's exceptions to discharge,

and that burden must be carried "by the preponderance of the evidence."  *Ball v. A.O. Smith

Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or

an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false

representation, or actual fraud, other than a statement in writing respecting the debtor's or an

insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

Five elements must be established in order to prevail on a Section 523(a)(2)(A) claim.

*Fleet Credit Card Servs. L.P. v. Macias (In re Macias)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y.

2004).  First, the creditor must show that the debtor made a false representation.

Second, the creditor must show that the debtor knew the representation was false at the

time it was made.  This element is satisfied if the maker knows or believes that the matter is not

as represented, does not have confidence in the accuracy of the representation, or knows he or

she does not have a basis to make the representation.  *AT&T Universal Card Servs. v. Mercer (In

re Mercer)*, 246 F.3d 391, 407 (5th Cir. 2001) (discussing Restatement (Second) of Torts § 526

(1977), which states, for purposes of certain torts, "the rules that determine whether a

misrepresentation is fraudulently made").

Third, the creditor must show that the debtor made the false representation with the intent

16

to deceive the creditor.  This element requires that a debtor acted with "moral turpitude or intentional wrong," and "while recklessness may be a sufficient basis to infer knowledge, it does not, without more, demonstrate a deliberate intention to cheat or mislead."  *New York v. Suarez (In re Suarez)*, 367 B.R. 332, 350 (Bankr. E.D.N.Y. 2007) (internal quotation marks omitted).  Applying this element, one court has found that a debtor's actions in executing closing documents without reading them were reckless but did not rise "to the level of actual fraud or deceit as required by [Section] 523(a)(2)(A)."  *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003).  Similarly, this Court has found that a debtor's misrepresentations as to whether a business was exempt from certain business laws demonstrated "a reckless disregard for whether the representation was false" but that recklessness, without more, did not demonstrate an intent to deceive or defraud.  *Suarez*, 367 B.R. at 350.

Fourth, the creditor must show that it justifiably relied on the representation.  And finally, the creditor must show that it sustained a loss that was proximately caused by the false representation.

With respect to the first element, whether the representations were false, it is undisputed by the parties that Mr. Moses made a false representation.  The documents that he prepared did not disclose the interests in the Property that were held by other parties.  As a result, First American has shown that there is no genuine dispute of material fact as to this element of its Section 523(a)(2)(A) claim.

With respect to the second element, whether Mr. Moses knew that the representations were false, First American argues that Mr. Moses must have been aware of the falsity of the representations because he must have prepared the wills, deeds, and other documents with

17

knowledge of a deed from 1958 that indicated there may be additional interests in the property. First American bases this argument on the assertion that Mr. Moses would not have been able to include certain information in those documents without the 1958 deed at hand.  For example, that deed states that Rose Turner owned the Property in joint tenancy.  Thus, First American reasons, Mr. Moses must have known there were other interests in the Property.  Mr. Moses responds that he was not aware of the other interests, and that he prepared the documents before he learned that the testator or grantor did not have the ability to transfer the entire ownership interest in the Property.

The Court finds that this element calls for an inquiry into Mr. Moses's knowledge and state of mind.  First American asks this Court to infer from the record that Mr. Moses "must have been" aware of the 1958 deed and the interests referenced therein when he prepared the documents at issue, and to conclude that Mr. Moses was aware that those documents contained false representations.  But on summary judgment, a court must construe the evidence "in the light most favorable to the non-moving party, drawing all inferences in that party's favor."  *UTA*, 446 B.R. at 49.  As a result, this Court declines to draw the inferences urged by First American with respect to what Mr. Moses "must have" known.  Thus, First American has not shown that there is no genuine dispute of material fact as to this element of its Section 523(a)(2)(A) claim.

With respect to the third element, whether Mr. Moses intended to deceive, First American argues that when Mr. Moses did not disclose the interests of certain individuals in the documents that he prepared, he intended to deceive the Surrogate's Court, the purchasers and mortgagees of the Property, and title insurers such as itself.  Mr. Moses responds that he was not aware of the omissions, received no interest or financial gain from the transactions, and did not intend to

18

deceive any of the individuals or entities, including First American, that were affected by the transactions.

Here too, the Court finds that this element calls for an inquiry into Mr. Moses's knowledge and state of mind, and declines to draw inferences against him as the non-moving party. Thus, First American has not shown that there is no genuine dispute of material fact as to this element of its Section 523(a)(2)(A) claim.

With respect to the fourth element, whether First American justifiably relied on the false representations, First American argues that the award by the New Jersey state court of $185,000 in damages establishes this element of its Section 523(a)(2)(A) claim. Mr. Moses does not specifically address this element, and does not specifically contest that First American is obligated to pay the amount awarded by the New Jersey state court in the Judgment Debt, arising out of the title insurance commitment or policy.

The Court finds that First American is the successor in interest to the rights and obligations established by a title insurance policy issued by United General Title Insurance Company. The record also shows that Mr. Moses provided professional services in his capacity as an attorney, including the preparation of wills and deeds used in connection with the transfers of title to the Property. And the record leaves no doubt that the omissions in those documents were justifiably relied upon by the parties. As a result, First American has shown that there is no genuine dispute of material fact as to this element of its Section 523(a)(2)(A) claim.

With respect to the fifth element, whether First American suffered a loss that was proximately caused by the false representations, First American advances in substance the same arguments that it makes with respect to reliance, that is, that the $185,000 damages award issued

19

by the New Jersey state court establishes this element of its Section 523(a)(2)(A) claim.  Mr. Moses does not directly address this element, and while he states that he intends to pursue an appeal of that decision, the record does not indicate that he has taken steps to do so.

The Court finds that First American has been damaged in an amount that is not less than the Judgment Debt, and that First American's losses were proximately caused by the false representations contained in the documents prepared by Mr. Moses and used in connection with the transfer of title to the Property.  As a result of those false representations, First American was required to pay a significant sum on the title insurance policy with respect to the Property, and that sum amounts to a loss that was proximately caused by Mr. Moses's false representations.  As a result, First American has shown that there is no genuine dispute of material fact as to this element of its Section 523(a)(2)(A) claim.

Accordingly, the Court concludes that First American has shown that there is no genuine dispute of material fact as to the first element of its Section 523(a)(2)(A) claim, that Mr. Moses made false representations, the fourth element of its claim, that it justifiably relied on those false representations, and the fifth element of this claim, that it sustained a loss that was proximately caused by the false representations.

But the Court also concludes that First American has not established that there is no genuine dispute of material fact as to the second element of its Section 523(a)(2)(A) claim, whether Mr. Moses was aware of the falsity of the representations at the time they were made. This determination requires the Court to assess Mr. Moses's knowledge and state of mind.  At most, First American has pointed to grounds that may support drawing inferences in its favor. But at the summary judgment stage, the Court is constrained to "construe the evidence in the

light most favorable to the nonmoving party, drawing all inferences in that party's favor." *UTA*, 446 B.R. at 49.  And the Court similarly concludes similarly that First American has not established that there is no genuine dispute of material fact as to the third element of its Section 523(a)(2)(A) claim, whether Mr. Moses made the false representations with the intent to deceive, such as with "moral turpitude" or "a deliberate intent to cheat or mislead."

For these reasons, and based on the entire record, First American's motion for summary judgment on its Section 523(a)(2)(A) claim is denied.

### *Whether the Judgment Debt Is Nondischargeable Under Section 523(a)(4)*

The Bankruptcy Code excepts from discharge debts that are a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  That is, under Section 523(a)(4), debts that are based on fraud or defalcation are nondischargeable where the debtor owed the creditor a fiduciary duty.  This "'dischargeability provision has for more than a century been construed narrowly and strictly by the Supreme Court.'" *Owens v. Owens (In re Owens)*, 2005 WL 387258, at *4 (S.D.N.Y. Feb. 17, 2005) (quoting *In re Gans*, 75 B.R. 474, 488 (Bankr. S.D.N.Y. 1987)), *aff'd*, 155 F. App'x 42 (2d Cir. 2005).

The burden to establish that a debt is nondischargeable is upon the creditor, and three elements must be shown.  *Duncan*, 331 B.R. at 77.  First, the creditor must show that the debt was incurred in connection with an express or technical trust.  This has been extended to debts arising out of relationships in which obligations of this nature are imposed by statute or common law.  *Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman)*, 196 B.R. 688, 697 (Bankr. S.D.N.Y. 1996).

21

Second, the creditor must show that the debtor acted in a fiduciary capacity with respect to that trust. Courts have found that an attorney-client relationship is a fiduciary relationship for purposes of this element. *Zois v. Cooper (In re Zois)*, 268 B.R. 890, 894 (S.D.N.Y. 2001), *aff'd*, 73 Fed. App'x 509 (2d Cir. 2003) (holding that "[a]n attorney-client relationship forms a fiduciary bond under Section 523(a)(4)").

And finally, the creditor must show that the debtor engaged in fraud or a defalcation within the meaning of bankruptcy law. The Supreme Court has recently observed that "defalcation" in this context requires *scienter* – that is, "a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase" – such as fraud, embezzlement, and larceny. *Bullock*, 133 S. Ct. at 1757. And the Supreme Court specified that for this element to be satisfied, the fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct . . . ." *Bullock*, 133 S. Ct. at 1756.

As *Bullock* makes plain, the denial of discharge for a particular debt requires a substantial showing by a creditor. From a debtor's perspective, it undermines the opportunity of a fresh start. At the same time, from a creditor's perspective, it prevents a wrongdoer from escaping the consequences of his or her misconduct. And from the Court's perspective, the questions raised by a challenge to dischargeability go to the core of the integrity of the bankruptcy system.

As this Court has previously found, "[a]t a minimum, a defalcation for purposes of Section 523(a)(4) must arise from conduct that justifies the substantial penalty of denial of dischargeability." *Duncan*, 331 B.R. at 87. Defalcation "requires a showing of 'conscious misbehavior or extreme recklessness.'" *Rahman v. Park (In re Seung Min Park)*, 2011 WL

1344495, at \*4 (Bankr. E.D.N.Y. Apr. 8, 2011) (quoting *Denton v. Hyman (In re Hyman)*, 502

F.3d 61, 68 (2d Cir. 2007)).  *See Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102,

110 (Bankr. E.D.N.Y. 2010) (noting that the Second Circuit, in *Hyman*, made clear that courts in

this Circuit "require a level of fault greater than mere negligence" or "an innocent mistake").  In

other words, a debtor must have committed an intentional wrong, which, at a minimum, must

involve the conscious disregard of "'a substantial and unjustifiable risk' that his conduct will turn

out to violate a fiduciary duty."  *Bullock*, 133 S. Ct. at 1759-60 (quoting Model Penal Code

§ 2.02(2)(c) (1985)).

With respect to the first element, whether the Judgment Debt was incurred in connection

with an express or technical trust, it is undisputed by the parties that Mr. Moses acted in a

fiduciary capacity as an attorney when he prepared the wills and deeds at issue here.  An

attorney-client relationship is a fiduciary relationship for purposes of Section 523(a)(4).  As a

result, First American has established that there is no genuine dispute of material fact as to the

first element of its Section 523(a)(4) claim.

With respect to the second element, whether Mr. Moses acted in a fiduciary capacity with

respect to that trust, it is similarly undisputed by the parties that Mr. Moses acted in his capacity

as an attorney, within the scope of his duty to his clients, when he created the wills and deeds in

question.  As a result, First American has established that there is no genuine dispute of material

fact as to the second element of its Section 523(a)(4) claim.

With respect to the third element, whether Mr. Moses engaged in defalcation or fraud

when creating the wills and deeds in question, First American argues that this element is

established because Mr. Moses holds himself out on his website as an experienced trusts and

estates and real estate attorney. First American argues that Mr. Moses knew or should have known of the differences between joint tenancy and tenancy-in-common ownership, but did not disclose the other interests in the Property on multiple occasions and in several documents that he prepared. Mr. Moses responds that the information that was omitted as to other interests in the Property was not available to him, and that as a consequence, he did not know that the documents he prepared were inaccurate. Mr. Moses also states that he followed the standard practice for attorneys preparing wills and deeds.

This determination calls for the Court to assess Mr. Moses's intent, and as noted above, First American has identified grounds that may support drawing an inference in its favor at trial. But that is different than demonstrating that there is no genuine dispute of material fact for purposes of summary judgment.

In addition, even if First American establishes that Mr. Moses's professional services fell below the standards of practice applicable to his situation, and amounted to a breach of the fiduciary duty owed to his clients, such a breach does not necessarily warrant the consequence of a finding of nondischargeability under Section 523(a)(4). As this Court has previously stated, "[n]ot every debt incurred by a fiduciary may arise as the result of a defalcation." *Duncan*, 331 B.R. at 87.

The Court finds that Mr. Moses conducted a trusts and estates and real estate practice as an attorney, and prepared the wills and deeds at issue here in that capacity. But the Court also finds that First American has not shown that there is no genuine dispute of material fact as to whether Mr. Moses undertook and carried out those professional duties to his clients with the "culpable state of mind" associated with the other grounds for nondischargeability set forth in

Section 523(a)(4), that is, fraud, embezzlement, and larceny.

Accordingly, the Court concludes that First American has shown that there is no genuine dispute of material fact as to the first element of its Section 523(a)(4) claim, that the Judgment Debt was incurred in connection with an express or technical trust, and the second element of its claim, that Mr. Moses acted in a fiduciary capacity with respect to that trust.

At the same time, the Court concludes that First American has not established that there is no genuine dispute of material fact as to the third element of its Section 523(a)(4) claim, whether Mr. Moses carried out his professional activities with the required culpable state of mind.

For these reasons, and based on the entire record, First American's motion for summary judgment on its Section 523(a)(4) claim is denied.

*Whether the Judgment Debt Is Nondischargeable Under Section 523(a)(6)*

Bankruptcy Code Section 523(a)(6) states that debt for willful and malicious injury by the debtor to another entity or to the property of another entity is nondischargeable.  Two elements must be satisfied.  4 Collier on Bankruptcy ¶ 523.12[2] (16th ed. 2013).

First, the creditor must establish that the debtor acted willfully in committing the injury. Willful means deliberate or intentional – and under either definition, the debtor must have actually known that he or she was violating the law, and must have intended to bring about injury.

Second, the creditor must establish that the debtor acted maliciously in committing the injury.  A malicious injury is one that is wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill will.  It may be found where a debtor breaches a statutory

25

duty, in "circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of discharge." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005) (quotation omitted).  At least one bankruptcy court has held that Section 523(a)(6)'s requirement of a malicious act may be satisfied by proof that the debtor blatantly and willfully violated a court order.  *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 145-46 (Bankr. S.D.N.Y. 1998).

With respect to the first element, whether Mr. Moses acted willfully, First American argues that the findings of fact made by the New Jersey state court show that Mr. Moses acted willfully to cause injury to it.  Mr. Moses responds that he had no intention to cause injury or to commit fraud, and gained no benefit from the misrepresentations contained in the documents that he prepared.

Here, at the outset, and as explained above, this Court declines to apply collateral estoppel effect to the New Jersey default judgment with respect to matters concerning Mr. Moses's knowledge and intent.  This includes the questions of whether Mr. Moses acted with knowledge and intent to cause the injury that was ultimately suffered by First American, and whether Mr. Moses acted maliciously.  In addition, the record does not show that Mr. Moses had a motive and opportunity for personal gain, or that he stood to profit personally by his actions.

And in all events, while evidence of motive and opportunity for personal gain could support an inference of willful and malicious acts at trial, it is far more difficult to establish such a state of mind at the summary judgment stage, where all reasonable inferences must be drawn in favor of the non-moving party, and all ambiguities must be resolved in that party's favor.  *See Mathirampuzha*, 548 F.3d at 72-73.  As a result, First American has not shown that there is no

26

genuine dispute of material fact as to the first element of its Section 523(a)(6) claim.

With respect to the second element, whether Mr. Moses acted maliciously, First American again argues that the New Jersey state court's judgment determining that Mr. Moses committed frauds on the court and engaged in fraudulent conveyances is sufficient to establish that Mr. Moses consciously set in motion a scheme that was calculated to interfere with the court's ability impartially to adjudicate a matter, and that this constitutes malice for purposes of Section 523(a)(6).  Mr. Moses again responds that he had no intention to cause injury or to commit fraud.

Here, the record does not establish that it was evident to Mr. Moses that his conduct would cause injury to First American.  And at the summary judgment stage, the Court declines to draw that inference against Mr. Moses as the non-moving party from the record.  As a result, First American has not shown that there is no genuine dispute of material fact as to the second element of its Section 523(a)(6) claim.

Accordingly, the Court concludes that First American has not shown that there is no genuine dispute of material fact as to either element of its Section 523(a)(6) claim.  For these reasons, and based on the entire record, First American's motion for summary judgment on its Section 523(a)(6) claim is denied.

## <u>Conclusion</u>

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment is denied. An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 19, 2013**

28

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**

SERVICE LIST:

Arthur M Neiss
Beattie Padovano, LLC
50 Chestnuet Ridge Road
Suite 208
Montvale, NJ 07645-0244

Raymond R. Siberine
Stein, McGuire, Pantages & Gigl, LLP
PO Box 460
354 Eisenhower Parkway
Livingston, NJ 07039-0460

Keith O Moses
PO Box 8264
Jersey City, NJ 07308

Keith O D Moses
591 Summit Avenue, Suite 211
Jersey City, NJ 07306